UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS A. DELGADO,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:19cv1116(MPS) |
| OFFICER KEVIN OCASIO, et al.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

The plaintiff, Luis A. Delgado, is incarcerated at the Garner Correctional Institution ("Garner") in Newtown, Connecticut. He has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, 1986, 1988 against Correctional Officers Kevin Ocasio, Matthew Colby, William St. John, Anthony Thibodeau, and John Doe. The plaintiff alleges *inter alia* that Officers Ocasio, Colby, St. John, and Thibodeau subjected him to excessive force during his confinement at Corrigan Correctional Institution ("Corrigan"). For the reasons set forth below, the court will dismiss the complaint in part.

**I.**    **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Facts

On May 25, 2017, prior to being transported to Garner from Corrigan, Officer Ocasio ordered the plaintiff to submit to a strip search. *See* Compl. at 3 ¶¶ 7-8. After removing his clothes, the plaintiff dropped them on the floor instead of handing them to Officer Ocasio. *Id.* ¶ 8. Officer Ocasio became enraged and punched the plaintiff in the face. *Id.* ¶ 9. After the plaintiff fell to the floor, Officer Ocasio kicked him in the head and neck. *Id.* When Officers Colby, St. John, and Thibodeau responded to the scene, they punched, slapped, and kicked the plaintiff. *Id.* at 4 ¶ 10. During the use of force, Officers Colby, St. John, and Thibodeau accused the plaintiff of resisting their efforts to attempt to gain control over him. *Id.*

Officers Ocasio, Colby, St. John, and Thibodeau subsequently placed the plaintiff in handcuffs and ankle restraints and medical staff members treated the plaintiff's injuries. *Id.* ¶¶ 10-11. Later that day Corrigan transferred the plaintiff to Garner. *Id.* ¶ 11.

Upon his arrival at Garner, officials placed the plaintiff in a cell in the segregation unit for fifteen days. *Id.* The plaintiff asked Officer John Doe, who worked in the segregation unit,

for an inmate request form and a grievance form. *Id.* Officer Doe indicated that he would not provide the plaintiff with either form. *Id.*

Shortly after his arrival at Garner, a mental health staff member diagnosed the plaintiff as suffering from post-traumatic stress disorder and anxiety and prescribed medication to treat the conditions. *Id.* at 5 ¶ 13. The plaintiff continues to suffer from anxiety, depression, and back pain. *Id.* ¶ 14.

## III. Discussion

The plaintiff contends that the defendants violated his Fifth, Eighth, and Fourteenth Amendment rights. In addition to his federal constitutional claims, the plaintiff asserts several state law claims.

### A. Section 1983 – Interference with Administrative Remedies

The plaintiff alleges that he was unable to exhaust his administrative remedies regarding the conduct of Officers Ocasio, Colby, St. John, and Thibodeau because Officer Doe refused to provide him with the necessary grievance forms. He claims that Officer Doe violated his due process rights under the Fifth and Fourteenth Amendment rights.

#### 1. Fifth Amendment

The Due Process Clause of the Fifth Amendment applies only to actions by the United States government and federal employees. *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding that the Fifth Amendment's due process clause only protects citizens against the conduct of federal government officials, not state officials). The plaintiff is not suing federal officials. Accordingly, the Fifth Amendment due process claim is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

3

## 2. Fourteenth Amendment

The Second Circuit has observed that "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Thus, the plaintiff has no Fourteenth Amendment right or liberty interest in filing requests or grievances under the Department of Correction's administrative remedy program.

Furthermore, the alleged refusal of Officer Doe to provide the plaintiff with inmate grievance forms did not violate his right to petition the government for the redress of grievances because his inability to exhaust his administrative remedies did not preclude him from accessing the court by filing a civil action. *See Riddick*, 31 F. App'x at 13 ("grievance restrictions [did not] violated Riddick's right to petition the government in light of the fact that the defendants did not restrict his right to file civil actions and the Prison Litigation Reform Act's . . . exhaustion requirement would not preclude him from asserting § 1983 claims in federal court that were barred by grievance restrictions") (citing *inter alia* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available). Accordingly, the plaintiff's allegation that he could not exhaust his administrative remedies because Officer Doe refused to provide him with the proper forms fails to state a due process claim under the Fourteenth Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Section 1983 – Excessive Force

The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The plaintiff's allegations of excessive force are covered by the Eighth Amendment. Accordingly, to the extent that the plaintiff is asserting a claim that the use of force by Officers Ocasio, Colby, St. John, and Thibodeau violated his rights under the Due Process Clause of the Fourteenth Amendment, that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate[1] states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

---

[1] The State of Connecticut's Judicial Branch website reflects that on September 25, 2012, in the Connecticut Superior Court for the Judicial District of New Britain, the plaintiff pleaded guilty to one count of risk of injury to a minor and a judge sentenced him to a twenty-year term of imprisonment, execution suspended after ten years of imprisonment, and followed by ten years of probation. This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions - by Docket Number using HHB-CR11-0256940-T (Last visited on August 16, 2019).

*Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

The plaintiff alleges that Officer Ocasio unnecessarily punched him in the head in response to his failure to hand over his clothes and then kicked him in the head and neck as he lay defenseless on the ground. After Officers Colby, St. John, and Thibodeau arrived at the scene, they kicked, slapped, and punched the plaintiff even though he claims that he was not resisting their efforts to gain control over him. The plaintiff asserts that he suffered injuries requiring medical treatment and continues to suffer from severe back pain, anxiety, depression and post-traumatic stress disorder as a result of the use of force. The plaintiff has plausibly alleged that the nature and degree of the force used as well as the circumstances in which it was used suggest that Officers Ocasio, Colby, St. John, and Thibodeau intended to cause the plaintiff pain or injury rather than to maintain discipline or security. The Eighth Amendment excessive force claim will proceed against Officers Colby, St. John, Thibodeau, and Ocasio.

### C. Section 1983 - Requests for Injunctive and Declaratory Relief

The plaintiff seeks injunctive relief from the defendants in their official capacities and monetary damages and declaratory relief from the defendants in their individual capacities. He does not specify the nature of the declaratory relief sought from the defendants. Rather, he leaves it up to the court to determine what declaratory relief might be "fair." Compl. at 10 ¶ 25.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity

from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Institute of Certified Public Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Thus, it operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56. The exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the *past*." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (emphasis added); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief.").

The allegations in the complaint stem from the acts of the defendants that occurred in May 2017 at Corrigan. The plaintiff is currently confined at Garner. There are no allegations of ongoing or potential future constitutional violations by the defendants. Thus, the plaintiff has not identified any legal relationships or issues that require resolution via declaratory relief. Furthermore, if the plaintiff were to prevail on his excessive force claim, the court necessarily would determine that the defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. The request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

For injunctive relief, the plaintiff seeks "standard medical treatment" in accordance with Public Act 07-206, codified as Connecticut General Statutes § 18-96a, and continued mental health treatment to help him to "to deal with the [e]ffects" of the defendants' use of force against him. Compl. at 10 ¶ 26. The complaint includes allegations that medical staff members at Corrigan treated the physical injuries that the plaintiff suffered after the use of force by defendants Colby, St. John, Thibodeau, and Ocasio on May 25, 2017, and that after the plaintiff's transfer to Garner he sought and received mental health treatment for two mental health conditions. The plaintiff has asserted no facts to suggest that he will not receive medical and mental health treatment from Department of Correction medical and mental health providers in the future. Thus, there are no allegations of an ongoing violation of the plaintiff's right to medical or mental health treatment for injuries that he suffered as a result of the force used by the defendants in May 2017. Nor are there allegations that the plaintiff will suffer irreparable harm in the future if his request for relief is not granted. Accordingly, the request for injunctive relief against defendants Colby, St. John, Thibodeau, and Ocasio is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**D.      Section 1985, 1986, and 1988 Claims**

In the introductory paragraph of the complaint, the plaintiff asserts that this action arises not only under 42 U.S.C. § 1983 but also under 42 U.S.C. §§ 1985, 1986, and 1988. He does not otherwise refer to sections 1985, 1986 or 1988 in the body of the complaint.

The first two subsections of 42 U.S.C. § 1985 clearly are not relevant to this action. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state

8

or federal judicial proceedings.

In order to state a claim under section 1985(3), a plaintiff must allege that: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) one or more of the defendants engaged in an overt act taken in furtherance of the conspiracy; and (4) as a result of the conspiracy the plaintiff suffered a physical injury or an injury to his or her property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Furthermore, a plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Id.* at 102. Section 1985(3) may not be construed as a "general federal tort law." *Id.*

The plaintiff does not allege that the defendants were acting in furtherance of a conspiracy motivated by racial or other unlawful discrimination. Thus, he has not stated a plausible claim of a violation of section 1985(3). The section 1985 claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Section 1986 is not a source of substantive rights. Rather, it is a remedy for a violation of section 1985. Because the court has dismissed the section 1985 claim, the section 1986 claim is not actionable and is also dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with federal law, or where appropriate, state law. This section does not provide for an independent cause of action. *See Moor v. Alameda County,* 411 U.S. 693, 702 (1973) ("Section 1988 does not enjoy the independent stature of an Act of Congress providing for the protection of civil rights. . . . Rather, as is plain on the face of the statute, the section is

intended to complement the various acts which do create federal causes of action for the violation of federal civil rights.") (internal quotation marks and citation omitted)

Section 1988(b) permits a district court, "in its discretion, [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of bringing a lawsuit under Section 1983 or various other civil rights provisions. 42 U.S.C. § 1988(b). A *pro se* litigant, however, is not entitled to an attorney's fee under section 1988. *See Kay v. Ehrler,* 499 U.S. 432, 435 (1991). The claim asserted under 42 U.S.C. § 1988 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### E.    State Law Claims

The plaintiff asserts three common law tort claims. He alleges that the conduct of Officers Colby, St. John, Thibodeau, and Ocasio constituted an assault, a battery, and the intentional infliction of emotional distress.

In Connecticut, there are two elements of the tort of civil assault: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) the other person was actually "put in imminent apprehension" as a result of the contact. *See Simms v. Chaisson*, 277 Conn. 319, 331, 890 A.2d 548, 555-56 (2006) (internal quotation marks and citation omitted). The tort of battery also requires two elements: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) "a harmful contact with the" other person results either "directly or indirectly." *Id.* at 331, 890 A.2d at 555 (internal quotation marks and citation omitted). Because the court has concluded that the excessive force claims against defendants Colby, St. John, Thibodeau, and Ocasio should

proceed and those claims are based on the same facts as the assault and battery claims, the court will exercise supplemental jurisdiction over the state law assault and battery claims. *See Boudreau v. Smith*, No. 3:17-cv-589(SRU), 2017 WL 2979682, at *5 (D. Conn. July 12, 2017) (courts "should exercise supplemental jurisdiction ... when federal constitutional claim of excessive force and assault claim are so tightly interwoven that decision on former will collaterally estop litigation of latter").

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011). To be held liable for intentional infliction of emotional distress, one's conduct must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (citations omitted).

At this initial screening phase, the court concludes that the plaintiff's allegation that he suffered post-traumatic stress disorder, anxiety and depression as a result of the unprovoked use of excessive force against him states a plausible claim of intentional infliction of emotional distress against defendants Colby, St. John, Thibodeau, and Ocasio. The court will exercise supplemental jurisdiction over the intentional infliction of emotional distress claim.

**ORDERS**

The court enters the following orders:

**(1)** The claims for injunctive and declaratory relief, the Fifth and Fourteenth Amendment due process claims, and the claims asserted under 42 U.S.C. §§ 1985, 1986, and 1988 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims against Correctional Officer Doe have been **DISMISSED**.

The Eighth Amendment excessive force claim **will proceed** against Correctional Officers Colby, St. John, Thibodeau, and Ocasio in their individual capacities and the court will exercise supplemental jurisdiction over the assault and battery and intentional infliction of emotional distress claims asserted against those defendants.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Correctional Officer Kevin Ocasio, Correctional Officer Matthew Colby, Correctional Officer William St. John, and Correctional Officer Anthony Thibodeau and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Colby, St. John, Thibodeau, and Ocasio shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose

to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The Clerk shall send a copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**(7)** The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**(8)** The Clerk shall enter the Standing Order Re: Initial Discovery concerning inmate cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**(9)** If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the

notification of change of address. The plaintiff should also notify defendants or defense counsel of his new address.

      SO ORDERED at Hartford, Connecticut this 27th day of August, 2019.

                                          /s/
                                       Michael P. Shea
                                       United States District Judge